EMORY RUBY ET AL., PROSECUTORS, v. BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF HUDSON ET AL.

Argued February 17, 1916—Decided April 21, 1916.

In proceedings taken under *Pamph. L.* 1900, *ch.* 58, *p.* 91, as amended by *Pamph. L.* 1902, *ch.* 25, *p.* 47, a resolution awarding a contract for the building and improvement of a county road must be adopted by the affirmative vote of at least three-fourths of all the members of the board of chosen freeholders, and in default whereof will be set aside, even though a prior resolution declaring that the improvement was desirable and approving the plans and specifications has received such affirmative three-fourths vote.

On *certiorari,* &c.

Before Justices GARRISON, TRENCHARD and BLACK.

For the prosecutors, *Collins & Corbin.*

For the defendant William Baker, incorporated, *Marshall Van Winkle* and *Warren Dixon.*

For the defendant Board of Chosen Freeholders, *James J. Murphy.*

The opinion of the court was delivered by

TRENCHARD, J. This writ was allowed the prosecutors, who are taxpayers of the county of Hudson, to review the proceedings of the board of chosen freeholders of the county of Hudson for the improvement of the Newark turnpike road lying between the westerly end of the bridge across the Hackensack river and the dividing line between the towns of Kearny and Harrison, in Hudson county.

The proceedings eventuated in a resolution purporting to award the contract for the improvement to defendant William Baker, incorporated, for the sum of $486,688.55.

Among other reasons assigned why the proceedings should be set aside is this:

"There was not an affirmative vote of three-fourths of the said board of chosen freeholders of the county of Hudson for the resolution purporting to award the contract for the improvement of said Newark turnpike road to William Baker, incorporated."

We are constrained to think the point is well taken.

The proceedings for the improvement of the road were taken under *Pamph. L.* 1900, *ch.* 58, *p.* 91; the first section of which is amended by *Pamph. L.* 1902, *ch.* 25, *p.* 47.

The section pertinent to the present inquiry is section 1 (*Pamph. L.* 1902, *ch.* 25, *p.* 47):

"Whenever, in any county of this state, any county road is not built and improved to the authorized or full width thereof and in the judgment of the board of chosen freeholders of such county it is desirable that such road should be so built

and improved, for the accommodation of public travel, such board may, upon the affirmative vote of at least three-fourths of all its members, so build and improve the same; * * *."

It is conceded that the resolution declaring that it was desirable that such road should be improved, and adopting the plans and specifications, received the necessary three-fourths vote.

It is also conceded that the resolution purporting to award the contract *did not* receive the necessary three-fourths vote.

The question, therefore, presented is: Was a three-fourths vote for the award of the contract essential under the statute declaring that the "board may, upon the affirmative vote of at least three-fourths of all its members, so build and improve the same?"

We think that question must be answered in the affirmative.

Ordinarily, to say that one may "build and improve" a road is equivalent to granting permission to do the physical act—to do the actual work of building. Whatever else this language may embrace, there seems to be no reason why it should embrace less. In the absence of legal limitations the board might do the work by contract, or by day work through county employes, or by their own physical exertions. It seems plain, however, that, since the proposed expenditure exceeded $1,000, the board was limited to doing the work by contract to be awarded to the lowest responsible bidder. *Pamph. L.* 1900, *p.* 92, § 2; *Pamph. L.* 1912, *p.* 593. But whether so or not, they elected to do the work by contract. Since the words "build" and "improve" in their plain interpretation mean nothing less than the physical act of doing the work, and since the board elected to contract for the whole improvement to accomplish its purpose, it logically follows that the award of this contract must have the affirmative vote of at least three-fourths of all the members of the board, no matter what other steps in the proceeding may also be deemed to be affected by that limitation.

The defendants insist that the adoption by a three-fourths vote of the resolution declaring the desirability of the improvement and approving the plans and specifications answers

the requirement of the statute. We think not. When the legislature enacted that the "board may, upon the affirmative vote of at least three-fourths of all its members, so build and improve" such a road, it announced a radical and significant departure from the ordinary rule in such matters. No doubt it had a good and sufficient reason for so doing. But with that we are not concerned. Our duty is to ascertain the intention of the legislature and to give effect to that intent as expressed in the statute. It does not seem possible that the legislature intended that only the original resolution declaring the improvement desirable and adopting plans and specifications should have a three-fourths vote. A member of the board might very well consider and vote that the improvement according to certain plans and specifications was desirable, yet, when it was ascertained that the cost would be great and its financing, because of changing conditions, difficult and burdensome, he might change his mind and conclude that it was better for the county not to make the improvement until conditions were more favorable. It is reasonable to suppose that some such state of affairs exists in the case at bar, otherwise, there would be the three-fourths vote for the award of the contract. A case might arise where the award of a contract to the lowest bidder would result in an expenditure in excess of the limit provided by law, although such a result was not contemplated when the call for bids was made. To adopt the view of the defendants, a member who for good reasons changes his mind when the bids come in would be unable to give effect to his change of mind because he voted for the original resolution. That cannot be. Merely to resolve that the improvement is desirable and to adopt plans and specifications does not "build and improve" the road. These steps are preliminary and may be rescinded, but once a contract is awarded the parties thereto become bound, and then, and not until then, has the work of building and improving the road begun.

Our conclusion, therefore, is, that under the statute it was essential that the resolution awarding the contract for the im-

provement of the road should have the affirmative vote of at least three-fourths of all the members of the board.

The result necessarily is that the proceedings under review will be set aside, with costs.